UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ANGELA U.,[1]

       **Plaintiff,**

v.                                                             Civil Action No. 2:22-cv-34

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security,*

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Angela U. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. Plaintiff cites a single error. She argues that the Commissioner's administrative law judge ("ALJ") incorrectly weighed opinion evidence from medical consultants regarding potential absenteeism caused by her medical impairments. As a result, she argues that the ALJ's residual functional capacity ("RFC") is not supported by substantial evidence. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. This Report finds no error in the ALJ's assessment of the evidence and therefore recommends that the court grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

### I.       PROCEDURAL BACKGROUND

On August 28, 2019, Plaintiff initially filed for DIB and SSI. (R. 10). Plaintiff alleged disability beginning October 27, 2017, id., based on cervical degenerative disease, insomnia, and anxiety, (R. 233). The state agency denied her application initially and on reconsideration. (R. 10). Plaintiff then requested an administrative hearing, which was held on August 6, 2021. Id. Counsel represented Plaintiff at the hearing, and a vocational expert ("VE") testified. Id.

On August 19, 2021, the ALJ denied Plaintiff's claims for DIB and SSI, finding she was not disabled during the period alleged. (R. 24). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15). The ALJ also found that Plaintiff could perform work within the national economy. (R. 22). On December 6, 2021, the Appeals Council denied Plaintiff's request for review. (R. 1).

On January 24, 2022, Plaintiff filed her complaint in this court. Compl. (ECF No. 1). Plaintiff seeks judicial review of the Commissioner's final decision that she was not entitled to an award of DIB or SSI, claiming that "the denial of her disability claim is not supported by substantial evidence . . . and therefore the denial of her claim should be reversed or remanded for further administrative proceedings." Id. ¶ 6 (ECF No. 1, at 2). On April 25, 2022, Plaintiff moved for summary judgment. (ECF No. 12). Plaintiff argues that the case should be reversed or remanded because the ALJ incorrectly evaluated relevant medical opinion evidence regarding her potential absenteeism. Br. Supp. Mot. Summ. J. ("Pl.'s Mem.") (ECF No. 13, at 5). On May 25, 2022, the Commissioner opposed Plaintiff's motion and moved for summary judgment. (ECF No. 14). The Commissioner argues that the ALJ adhered to the controlling regulations when determining the persuasiveness of the medical opinions, and that the resulting RFC is supported

by substantial evidence. Mem. Supp. Def.'s Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Opp'n") (ECF No. 15, at 15). Plaintiff replied. ("Pl.'s Reply") (ECF No. 16). After a review of the record, this Report considers the parties' arguments.

## II. FACTUAL BACKGROUND

Plaintiff was born on July 16, 1967, and at the time of the ALJ's decision, she was 54 years old. (R. 55). She was thus an individual "closely approaching advanced age" under the regulations. See 20 C.F.R. §§ 404.1563(d), 416.963(d). Plaintiff meets the insured status requirements under the Social Security Act until December 31, 2022. (R. 12). She has not engaged in substantial gainful activity since October 27, 2017, the alleged onset date. Id. She has at least a high school education, and she has reported past work as hair stylist. (R. 22, 234).

### A. Plaintiff's Health Treatment

Plaintiff's arguments in this court do not require a complete review of her medical history as she disputes only the ALJ's assessment of medical opinions from Jo-Anne Guzman-Lee, M.D., and Eric Goldberg, M.D., who based their opinions on Plaintiff's cervical radiculopathy. See Pl.'s Mem. (ECF No. 13, at 7); see also (R. 592, 594, 778, 779).

Guzman-Lee is Plaintiff's internal medicine physician, with whom Plaintiff established treatment in April 2019.[2] (R. 323–36). Plaintiff reported over three years of "pain that comes and goes on the neck that goes down the left arm," (R. 326), and Guzman-Lee diagnosed her with radiculitis, (R. 328). In July, she complained of worsening cervical pain, (R. 350), but her neck examination was normal, (R. 352). An August 2019 magnetic resonance imaging ("MRI") exam showed some degenerative changes, although "[v]ertebral alignment and articulation [were]

---

[2] The Administrative Record contains no treatment records closer to October 27, 2017, the alleged date of disability. See Def.'s Opp'n (ECF No. 15, at 4).

3

otherwise unremarkable." (R. 396–97, 455–57). An x-ray of her spine was unremarkable. (R. 454). Later that month, Guzman-Lee found some reproducible pain in Plaintiff's spine, and she prescribed pain medication and referred Plaintiff to physical therapy. (R. 373). Physical therapy generated improvement. See (R. 418–19, 422).

Guzman-Lee also referred Plaintiff to Dr. Goldberg, a treating neurologist, whom Plaintiff saw in September 2019. (R. 393). Goldberg assessed Plaintiff with 5/5 motor strength, normal tone and bulk, and unremarkable gait. (R. 394). He found she had cervical radiculopathy and suggested physical therapy. Id.; see also (R. 418–19, 422) (showing improvement with therapy). In November 2019, Goldberg interpreted an electromyography and nerve conduction study ("EMG/NCS") of Plaintiff's left arm as showing "an acute nerve impingement at the left C5-6 root level consistent with cervical radiculopathy," but "no evidence of a peripheral or entrapment neuropathy." (R. 472). In March 2020, Goldberg found that Plaintiff experienced "some improvement on her current medications but still [had] occasional issues." (R. 596). Plaintiff refused steroid injections for pain management. Id. In May 2021, Goldberg found that medication improved but did not resolve her neck pain. (R. 745). Her neurological exam was "[n]ormal and unchanged." Id.

Throughout the relevant period, Plaintiff generally had normal strength, range of motion, and coordination. See, e.g., (R. 394, 446, 619). In January 2020, she was diagnosed with osteoarthritis in her left knee, and her physician suggested injections. (R. 620) (noting that she was "waiting for prior authorization from insurance to start"). She reported that she exercised on an elliptical machine and treadmill three times a week, despite her knee pain. (R. 615). An August 2020 consultative exam by Ma Zaidelaine Llena, N.P., found that Plaintiff had slightly limited abduction in her left elbow and limited flexion in her elbow (3/4), but otherwise had full arm

flexion and extension, full grip strength, and full range of motion in her hips, knees, and ankles. (R. 608). Her standing was intact, and her gait was normal and unassisted. Id.

**B.      Opinion Testimony**

Although the ALJ considered other medical opinions, Plaintiff's claims in this court focus primarily on four medical opinions from Guzman-Lee and Goldberg regarding her absenteeism.[3] Both treating physicians opined that Plaintiff would be absent at least four times per month from all employment. (R. 592, 594, 778, 779). Each opinion was a check-box opinion.

1.      **Jo-Anne Guzman-Lee, M.D.**

On February 4, 2020, Guzman-Lee completed a medical source statement based on Plaintiff's cervical radiculopathy. (R. 592). She listed certain signs or symptoms that Plaintiff was experiencing, including neck, shoulder, and hand/wrist pain; muscle spasms and weakness; pain/numbness in arms; and depression and anxiety. Id. She opined that Plaintiff could occasionally lift up to 10 pounds but never more. Id. She found that Plaintiff could sit or stand for about two hours. Id. Guzman-Lee opined that Plaintiff would be absent because of her pain and medical problems four or more days a month. Id.

On July 1, 2021, Guzman-Lee completed a second medical source statement. (R. 779). She now opined that Plaintiff could sit or stand for less than two hours, and she handwrote on the checkbox form that Plaintiff could not "carry anything without triggering pain." Id. She also opined that Plaintiff could not perform any reaching with her left hand. Id. Guzman-Lee repeated her opinion that Plaintiff would be absent more than four days a month. Id.

---

[3] State agency physicians Bert Spetzler, M.D., (R. 61–63), and Patricia Staehr, M.D., (R. 92–94), reviewed the record and provided opinions. Consultative examinations were also performed, and opinions provided, by Scarlett Jett, Psy.D., (R. 597–602), and Ma Zaidelaine Llena, N.P., (R. 605–12). As these are not relevant to the alleged errors here, they are not summarized in detail.

### 2. Eric Goldberg, M.D.

On February 6, 2020, Goldberg completed a medical source statement based on Plaintiff's cervical radiculopathy. (R. 594). He listed certain signs or symptoms that Plaintiff was experiencing, including neck, shoulder, and hand/wrist pain; muscle spasms and weakness; and pain/numbness in arms. Id. He opined that Plaintiff could rarely lift up to 10 pounds but never more. Id. Plaintiff had the "rare ability" to perform manipulative movements with her arms. Id. He found that Plaintiff could sit or stand for at least six hours. Id. Goldberg opined that Plaintiff would be absent because of her pain and medical problems four or more days a month. Id.

On June 17, 2021, Goldberg completed a second medical source statement. (R. 778). He listed the additional signs and symptoms of multiple trigger/tender points. Id. He now opined that Plaintiff could sit/stand for less than two hours during a workday, and that she had the "occasional ability" to perform manipulative movements with her arms. Id. He again opined that Plaintiff would be absent more than four days a month. Id.

### C. Adult Function Report

Plaintiff completed an adult function report in November 2019. (R. 254–61). She reported that personal hygiene was "not easy," (R. 255), but she prepared her own meals and performed some household chores, such as laundry and wiping the counters, (R. 256). She frequently read, watched television, and received visits from friends and family. (R. 258).

### D. Testimony Before the ALJ

The ALJ questioned Plaintiff at the hearing on August 6, 2021. (R. 30–31). The ALJ also heard testimony from the VE, Herman Bates. (R. 31).

### 1. Plaintiff's Testimony

On direct questioning by the ALJ, Plaintiff testified that she lived alone. (R. 37). She would drive short distances (i.e., one to two miles) to the grocery store. Id.

### 2. Testimony from the VE

The ALJ's hypothetical for the VE posited a person with the same age, education, and work experience as Plaintiff with the following limitations:

> [The] person is limited to light work, and could frequently push and pull with the non-dominant arm, could frequently reach overhead with the dominant arm and only occasionally with the non-dominant arm, and frequently reach in all directions—in other directions with the non-dominant arm, could never climb ladders, ropes, and scaffolds, and occasionally stoop, kneel, crouch, and crawl.

(R. 49). The ALJ then limited the RFC to occasional handling. (R. 50). The VE testified that jobs would be available to such a person, identifying rental clerk (DOT 295.357-018) with 58,000 jobs nationally; and rental boat clerk (DOT 295.467-014) with 6,000 jobs nationally.[4] (R. 50–51). Following an additional query by the ALJ, the VE testified that no employment would tolerate more than 15% of time off task or absences of more than two days a month. (R. 51–52).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison

---

[4] The VE also identified usher (DOT 344.677-014) with 7,000 jobs nationally. The ALJ "excluded the usher job . . . because the vocational expert testified that the job is performed primarily standing, and the RFC limits the claimant to four hours of standing and walking in a regular work day." (R. 23).

Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

Plaintiff's brief identifies one error in the ALJ's decision that she claims warrants remand. She contends that the ALJ's findings are not supported by substantial evidence because she failed to individually analyze the persuasiveness of certain medical opinions about her potential absenteeism. As explained below, this Report finds no error in the ALJ's analysis of the opinion testimony. Accordingly, this Report concludes that remand is not warranted, and therefore recommends that the court affirm the Commissioner's decision.

### A. Framework for SSA Disability Evaluation

A person may file for and receive disability insurance benefits under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the

retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d). Title XVI of the Act provides supplemental security income benefits to "financially needy individuals who are aged, blind, or disabled regardless of their insured status." Bowen v. Galbreath, 485 U.S. 74, 75 (1988) (citing 42 U.S.C. § 1382(a)). As relevant here, the Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), § 416.905(a). An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

SSA regulations set out a sequential analysis which ALJs use to make their determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Specifically, the regulations direct the ALJ to answer the following five questions:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3. Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4. Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5. Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled. An affirmative answer to questions three or five establishes

9

disability. The claimant bears the burden of proof during the first four steps; if the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The SSA considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3), 404.1520b, 416.920(a)(3); 416.920b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)). Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.    The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date until the hearing date. (R. 12). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: C5-6 degenerative changes and left C5-6 radiculopathy; and left knee osteoarthritis. Id. At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combinations of impairments that met or medically equaled the severity of one of the listed impairments. (R. 15). The ALJ developed a finding regarding Plaintiff's RFC. She determined Plaintiff was able

> to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except the claimant can frequently push and pull with the non-dominant (left) arm. She can frequently reach overhead with the dominant (right) arm but only occasionally reach overhead with the non-dominant arm. She can frequently reach all other directions with the non-dominant arm. She can never climb ladders, ropes, and scaffolds. She can occasionally stoop, kneel, crouch, and crawl. The claimant can stand and walk for four hours in an eight-hour work day. She can occasionally

10

reach, handle, and finger. She can lift and carry less than ten pounds frequently, but she can carry less than ten pounds occasionally with the left, non-dominant hand and carry twenty pounds occasionally with the dominant hand.

(R. 16). At step four, the ALJ concluded that Plaintiff could not perform past relevant work. (R. 22). At step five, the ALJ found work in the national economy that Plaintiff could perform and thus found that she was not disabled. (R. 22–23).

C.      **The ALJ's Evaluation of the Medical Opinions Is Supported by Substantial Evidence.**

Plaintiff only raises one challenge in this court—that the ALJ "failed to acknowledge, weigh, and credit or discredit" Goldberg's and Guzman-Lee's opinions that Plaintiff would "be absent from work an average of four or more days per month" because of her impairments. Pl.'s Mem. (ECF No. 13, at 7–8). These medical opinions are relevant because the VE testified that more than two absences per month would preclude all work. (R. 52). Defendant responds, arguing that the ALJ's evaluation of these medical opinions at the "source level" is supported by substantial evidence, and the ALJ was not required to evaluate the physicians' specific opinions on absenteeism. Def.'s Opp'n (ECF No. 15, at 16–17, 19). Because the ALJ's overall evaluation is consistent with the controlling regulations, remand is not appropriate.

1.      **The ALJ considered the overall persuasiveness of Guzman-Lee's and Goldberg's medical opinions.**

Because the ALJ appropriately evaluated the medical opinions as required by the applicable regulations,[5] remand is not required. Under the rules, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers

---

[5] On January 18, 2017, the SSA adopted new rules for considering medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c. The new rules apply to all claims filed after March 27, 2017. Id. Because Plaintiff filed her claims on August 28, 2019, (R. 10), the new rules apply.

their overall "persuasiveness," id., and while the ALJ may consider many factors in evaluating persuasiveness, he or she must explain only "the most important factors" of "supportability and consistency," § 404.1520c(b)(2). Supportability evaluates whether a medical source supports his or her opinion with "objective medical evidence and supporting explanations," § 404.1520c(c)(1), while consistency evaluates whether "evidence from other medical sources and nonmedical sources" also support the source's opinion, § 404.1520c(c)(2). The ALJ discounted Guzman-Lee's and Goldberg's medical opinions because they were unsupported by Plaintiff's treatment records and inconsistent with the record as a whole. (R. 21). This finding is supported by substantial evidence in the record.

  a. **The ALJ's evaluation of Guzman-Lee's opinions is supported by substantial evidence.**

The ALJ's finding that Guzman-Lee's opinions were "somewhat persuasive overall" is supported by substantial evidence. (R. 21). When determining the record did not support certain portions of the opinions, the ALJ noted that Plaintiff's medical findings were mostly limited to her left arm, not the right. Id. Plaintiff reported pain to Guzman-Lee "that comes and goes on the neck that goes down the left arm . . . ." (R. 326); but see (R. 350) (reporting some right arm pain). After Plaintiff reported arm and neck pain in July 2019, Guzman-Lee examined Plaintiff, but made only normal neck findings. (R. 350–52). An EMG/NCS study was performed on only Plaintiff's left arm. (R. 472). The ALJ was thus justified in finding that Plaintiff's cervical radiculopathy did not cause such extensive manipulative limitations as Guzman-Lee opined.

The ALJ also addressed Guzman-Lee's opinions on Plaintiff's sitting, standing, and walking limitations, noting that Plaintiff only received "conservative treatment," and had "good lower extremity strength and [did] not need an assistive device." (R. 21). In fact, Plaintiff's providers also generally noted her normal strength, range of motion, and coordination. (R. 394,

446, 619). An MRI was relatively unremarkable expect for some small degenerative changes. (R. 396–97, 455–57). She continued to exercise on an elliptical and treadmill, (R. 615), and Goldberg assessed Plaintiff with full strength, (R. 394) (assessing 5/5 on motor exam). There is no mention of a cane or other assistive device. See (R. 21, 608). Each of these medical findings support the ALJ's overall assessment that Guzman-Lee's opinions were "somewhat persuasive." (R. 21).

### b. The ALJ's evaluation of Goldberg's opinions is supported by substantial evidence.

Like with Guzman-Lee, the ALJ's finding that Goldberg's opinions were "somewhat persuasive overall" is supported by substantial evidence. (R. 21). Goldberg's own exam notes show that Plaintiff refused his offer of steroid injections for pain management, and he continued her medication when she showed "some improvement on her current medication," with only "occasional issues." (R. 596). His May 2021 neurological exam found Plaintiff "[n]ormal and unchanged. (R. 745). There is also substantial inconsistency in Goldberg's opinion—the ALJ observed that Goldberg changed Plaintiff's reaching limitations from "rare" to "occasional" without explanation. (R. 21); compare (R. 594), with (R. 778). Goldberg's opinion also conflicts with Guzman-Lee's, as Goldberg opined that Plaintiff could rarely lift more than 10 pounds, (R. 594, 778), but Guzman-Lee assessed Plaintiff with a grip strength of 20 pounds in her right hand, (R. 437). A consultative exam also showed mostly intact (4/5) grip strength. (R. 608). Additionally, Plaintiff's independent daily activities support the ALJ's opinion, (R. 21), because Plaintiff could prepare her own meals, perform some household chores, (R. 256), and drive to the grocery store, (R. 37).

Although Goldberg based his opinions on the cervical radiculopathy, not knee impairments, see (R. 592, 778), the ALJ also appropriately found that Goldberg's sitting, standing, and walking limitations were not supported "given [Plaintiff's] intact gait and station, independent

13

gait, and lack of significant medical treatment of her left knee," (R. 21). In fact, Goldberg assessed Plaintiff with 5/5 motor strength, normal tone and bulk, and unremarkable gait. (R. 394). Although diagnosed with osteoarthritis in her left knee, her provider only recommended injections. (R. 620). Other providers noted her normal strength and coordination. (R. 446, 619). And a consultative examiner found that Plaintiff had a full strength in her hips, knees, and ankles; could stand intact; and had a non-antalgic gait without use of an assistive device. (R. 608). Thus, like with Guzman-Lee, the ALJ's overall assessment of Goldberg's opinion was also supported by substantial evidence.

### c. The ALJ did not cherry-pick the factual record in evaluating Guzman-Lee's and Goldberg's medical opinions.

Plaintiff argues that the ALJ "must cite and weigh both the favorable and unfavorable parts" of a medical opinion, implying that the ALJ's treatment of the record amounts to cherry-picking. Pl.'s Mem. (ECF No. 13, at 7). An ALJ cannot "cherrypick[] facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Bilotta v. Saul, 850 F. App'x 162, 169 (4th Cir. 2021) (quoting Lewis, 858 F.3d at 869); see also Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011) (describing how the ALJ engaged in cherry-picking by "locat[ing] a single treatment note that purportedly undermines [the source's] overall assessment of [the plaintiff's] functional limitations"); Apr. R.D. v. Saul, No. 2:20-cv-210, 2021 WL 3260072, at *9 (E.D. Va. June 29, 2021) (recommending remand because the ALJ "selectively cherry-picked unrepresentative evidence"), R. & R. adopted by 2021 WL 3215093 (E.D. Va. July 29, 2021).

However, the facts the ALJ used to discount Guzman-Lee's and Goldberg's medical opinions were representative of the record as a whole. See Arakas v. Comm'r, SSA, 983 F.3d 83, 99, 102 (4th Cir. 2020) (finding that the ALJ errs when misstating or mischaracterizing facts). The ALJ thoroughly detailed the medical record in support of the RFC. (R. 16–22); see McCartney v.

14

Apfel, 28 F. App'x 277, 279 (4th Cir. 2002) (agreeing "that the ALJ need only review medical evidence once in his decision"). Indeed, the ALJ acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that the record did not support "the intensity, persistence, and limiting effects" that Plaintiff alleged. (R. 17). For example, while Plaintiff had some objective medical findings that could support some symptoms, including that Guzman-Lee found reproducible pain in her spine, (R. 373), her x-rays and MRI were relatively unremarkable, (R. 454, 455–56). Plaintiff consistently demonstrated normal strength, range of motion, and coordination. (R. 394, 446, 619). She also refused steroid injections for pain management, (R. 596), which the ALJ found notable, (R. 19). The ALJ thus did not cherry-pick the record, and findings are supported by substantial evidence.

### 2. The ALJ was only required to provide a source-level analysis of Guzman-Lee's and Goldberg's opinions.

But Plaintiff does not challenge the ALJ's overall evaluation of Guzman-Lee's and Goldberg's opinions—she contends instead that the ALJ should have analyzed their individual absenteeism opinions. See Pl.'s Mem. (ECF No. 13, at 8). Having failed to explicitly reject the doctors' opinions regarding four or more absences per month, Plaintiff contends is itself legal error. See id. The parties thus dispute whether ALJs can perform a source-level analysis of the medical opinion or must weigh the persuasiveness of a source's individual opinions. Compare Def.'s Opp'n (ECF No. 15, at 16–17) (arguing that "under the new regulatory framework . . . an ALJ's analysis need not address each medical opinion from a medical source 'individually'"), with Pl.'s Reply (ECF No. 16, at 1) (arguing that this approach "does not comport with Fourth Circuit precedent"). The regulations explicitly call for source-level analysis:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions . . . in your case record. Instead, when

15

> a medical source provides multiple medical opinion(s) . . . , we will articulate how we considered the medical opinions . . . from that medical source together in a single analysis . . . . We are not required to articulate how we considered each medical opinion . . . from one medical source individually.

20 C.F.R. § 404.1520c(b)(1); see also 20 C.F.R. § 416.920c(b)(1). This provision was added as part of the new regulations, which were effective March 27, 2017, and which apply to Plaintiff's claim. See supra note 5; cf. 20 C.F.R. § 404.1527 (old regulations). The language is sufficiently plain—"each medical opinion" does not need a separate analysis of consistency and supportability. See 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). The ALJ was thus not required to consider Goldberg's and Guzman-Lee's opinions about Plaintiff's absenteeism individually.

In her reply, Plaintiff criticizes Defendant for failing to "cite to or rely upon any caselaw to support this interpretation" of the regulations. Pl.'s Mem. (ECF No. 16, at 2) (agreeing to a single analysis but contending that the ALJ must still "weigh each relevant finding made in the medical opinions"). But the language is plain, and courts interpreting these new regulations have applied Defendant's interpretation. See, e.g., Godfrey v. Kijakazi, No. CV 6:20-2504, 2021 WL 8014681, at *6 (D.S.C. Sept. 10, 2021) (finding "that the ALJ adequately provided a source-level articulation"), R. & R. adopted by 2022 WL 951620 (D.S.C. Mar. 30, 2022); Emily S. v. Kijakazi, No. 1:20-cv-0258, 2022 WL 354578, at *19 (S.D. Ind. Jan. 12, 2022) (confirming that "the SSA will not consider all the factors to evaluate each separate opinion individually"); cf. Jones v. Saul, No. 2:19-cv-01273 AC, 2021 WL 620475, at *8 (E.D. Cal. Feb. 17, 2021) (stating that "the ALJ may consider multiple medical opinions from a single medical source together in one analysis"). I likewise do not think that Plaintiff's interpretation is a plausible one.

To the extent that Plaintiff is arguing that Fourth Circuit precedent prevents Defendant's interpretation, "the Social Security Administration may, by regulation, override the court's own prior interpretations of the Act." Agans v. Saul, No. 2:20-cv-00508, 2021 WL 1388610, at *7

16

(E.D. Cal. Apr. 13, 2021) (citing Lambert v. Saul, 980 F.3d 1266 (9th Cir. 2020)). Insofar as prior caselaw may have implied that an ALJ must explicitly analyze each individual finding within every medical opinion,[6] such as the physicians' individual opinion on absenteeism, the SSA modified those interpretations by enacting 20 C.F.R. § 416.920c(b)(1).

Failing to discuss every opinion within a medical opinion also does not constitute cherry-picking. Plaintiff argues that selectively discussing medical opinions "that if credited would have resulted in disability," is another form of cherry-picking evidence. Pl.'s Mem. (ECF No. 13, at 7); see supra (citing law on impermissible cherry-picking). But "an ALJ does not have to articulate, or expressly state, his reasoning regarding each opinion or finding from every medical source." Godfrey, 2021 WL 8014681, at *7. If an ALJ "thoroughly discussed" the record evidence, then simply failing to explicitly address some portions of a medical opinion does not amount to cherry-picking. Godfrey, 2021 WL 8014681, at *7 ("Such analysis falls far short of any alleged 'ignoring' or 'cherry-picking' the record."). The ALJ here performed such a thorough analysis. See supra. And here, the ALJ discussed other similarly restrictive opinions from Goldberg and Guzman-Lee, indicating that she did not misrepresent or misunderstand the import of their opinions.

These opinions involved restrictive functional limitations, such as lifting and carrying. (R. 21). These are the types of restrictions that may have informed Guzman-Lee's and Goldberg's absenteeism opinions, although neither physician provided any specific narrative in support of those absenteeism opinions. See (R. 592, 594, 778, 779). By discussing the functional limitations,

---

[6] Throughout her pleadings, Plaintiff relies upon caselaw that applies the old regulations, including that controlling weight should be applied to treating physician's opinions unless there is persuasive contrary evidence. See Pl.'s Mem. (ECF No. 13, at 6–7); Pl.'s Reply (ECF No. 16, at 2–3); see, e.g., Rucker v. Colvin, No. 7:15-cv-00148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016); Dionne S. v. Kijakazi, No. 6:20-CV-12, 2021 WL 3622147, at *6 (W.D. Va. Aug. 16, 2021); Bilotta, 850 F. App'x at 169–70. To the extent those holdings rely on the old regulations, this caselaw is not persuasive.

the ALJ appropriately evaluated the core of the physician's opinions, thus not misrepresenting Guzman-Lee's and Goldberg's opinions in her evaluation. Cf. Cameron R.S. v. Comm'r of Soc. Sec., No. 4:21-cv-116 (E.D. Va. June 13, 2022) (ECF No. 16, at 21) (observing that the "ALJ also discounted [the physician's] opinion on absences because it presumed the nature of work and thus was a vocational opinion outside his area of expertise").

Plaintiff also relies upon Arakas v. Commissioner of Social Security, 983 F.3d 83 (4th Cir. 2020), for "the level of explanation and specificity required when citing and weighing medical opinions." Pl.'s Reply (ECF No. 16, at 2). "To pass muster, ALJs must build an accurate and logical bridge from the evidence to their conclusions." Arakas, 983 F.3d at 95 (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)) (cleaned up). However, as discussed above, the ALJ explained why Guzman-Lee's and Goldberg's opinions were unsupported and inconsistent, and she cited sufficient evidence in support of those evaluations. See (R. 21). The ALJ also specifically cited Guzman-Lee's opinion on absenteeism, providing convincing evidence that she considered whether Plaintiff's limitations would cause work-preclusive absences. Id. This appeal is not an opportunity to relitigate the ALJ's conclusions. See Craig, 76 F.3d at 589 (holding that if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," then the court defers to the ALJ (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987))).

Plaintiff argues that when "the ALJ does not provide the required explanation, it is not for defense counsel or the court to supply the missing analysis." Pl.'s Reply (ECF No. 16, at 3) (citing Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962); Arakas, 983 F.3d at 109); Patterson v. Comm'r of Soc. Sec., 846 F.3d 656, 662 (4th Cir. 2017)). Courts should reject "post-hoc justification[s]" of ALJ decisions. Arakas, 983 F.3d at 109. However, Defendant correctly points out that—to the extent discernable from their records—Guzman-Lee and Goldberg based

their absenteeism opinions on various signs and symptoms related to Plaintiff's cervical radiculopathy, see (R. 592, 594, 778, 779), and the ALJ found that Plaintiff's allegations regarding those limitations were "inconsistent with the evidence on file, in light of the claimant's conservative course of treatment, medications, treatment notes, and objective findings," (R. 17). See Def.'s Opp'n (ECF No. 15, at 19–20). The ALJ carefully reviewed the medical record, including that her left-arm tingling was off and on, (R. 326), that medication improved her symptoms, (R. 596), and there was "no indication . . . of any recommended surgery on the claimant's cervical spine," (R. 19). While the ALJ did not explicitly address the combination of absenteeism with the cervical spine evidence, the ALJ adequately engaged with the record.[7] Her opinion is thus capable of meaningful judicial review. Remand is not warranted.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment, (ECF No. 14), DENY Plaintiff's Motion for Summary Judgment, (ECF No. 12), and AFFIRM the Commissioner's finding of no disability.

---

[7] To the extent either physician was offering an opinion on absenteeism unrelated to Plaintiff's physical limitations, such evidence closely resembles an opinion that Plaintiff is disabled—an issue still reserved exclusively to the Commissioner. 20 C.F.R. § 404.1520b(c)(3) (describing "issues reserved to the Commissioner"); Agans, 2021 WL 1388610, at *7; see also Melendez v. Comm'r of Soc. Sec., No. 20-CV-6695, 2022 WL 912928, at *7 n.10 (S.D.N.Y. Mar. 28, 2022) (observing that the ALJ also found a physician's opinion non-persuasive "in part because a doctor's statement indicating that the claimant is 'unfit for work or any strenuous physical activity' is not a medical opinion, but rather an administrative finding reserved for the Commissioner." (cleaned up)); cf. Hannahs v. Comm'r of Soc. Sec., No. 3:20-cv-01905, 2021 WL 8342817, at *14 (N.D. Ohio Dec. 15, 2021) (collecting caselaw that "supports and counters" the argument "that opinions regarding absences and breaks at a work-preclusive frequency are essentially tantamount to a disability opinion").

## VI. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 19, 2022